# C. M. HANKS v. GREAT NORTHERN RAILWAY COMPANY.[1]

December 3, 1915.

Nos. 19,545—(190).

**Railway — walking on right of way.**

1. The travel by pedestrians along and upon the track of a fenced railway right of way, running through the ordinary agricultural districts, does not give rise to an inference that it is at the implied invitation or passive consent of the railroad.

**Same — decedent a trespasser.**

2. The situation disclosed plaintiff's intestate to have been a trespasser upon defendant's right of way at the time of his death.

**Negligence of engineer.**

3. The evidence shows the time and place of the accident to have been such that the engineer, in charge of the train which caused the death, was not required to anticipate the presence of persons on the track.

**Contributory negligence.**

4. Plaintiff's intestate was guilty of contributory negligence as a matter of law.

**Wilful negligence.**

5. There was no evidence of wilful or wanton negligence.

Action in the district court for Lyon county by the administrator of the estate of F. M. Hanks, deceased, to recover $7,500 for the death of his intestate. The answer alleged that at the time of decedent's death he was a trespasser upon the railroad tracks of defendant, and alleged that his death was not in any manner caused by any act or omission of defendant or its servants and that the death was directly caused by decedent's own negligence. The case was tried before Olsen, J., who, when plaintiff rested and at the close of the trial, denied defendant's motion to dismiss the action, and a jury which returned a verdict for the amount demanded. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed.

[1]Reported in 154 N. W. 1088.

Reversed with direction to render judgment for defendant notwithstanding the verdict.

*M. L. Countryman* and *A. L. Janes,* for appellant.

*Robinson & English, Tom Davis* and *Ernest A. Michel,* for respondent.

HOLT, J.

Defendant's right of way runs in a southwesterly direction from the village of Russell to the village of Florence in Lyon county, this state, the distance between the two stations being eight miles. Another railroad running west from Tracy, Minnesota, crosses the track of defendant a few miles south of Russell. At this crossing is no station, but persons desiring to go to Russell from Tracy get off at Burchard, some distance east of the crossing, and proceed thence by team or on foot to Russell. In walking some take the railroad right of way instead of the public highway, thereby shortening the distance considerably. Defendant's right of way between Russell and Florence is fenced, and has proper cattle guards at public crossings. Two miles out of Russell a public highway crosses the railroad. On this road, a short distance east of the railroad, is a school house. Between this public road-crossing and Russell, Redwood river cuts defendant's right of way, and the usual steel railroad bridge, open between the ties, spans it. The bridge is about 100 feet long.

On February 21, 1914, plaintiff's intestate came by train from Tracy, left it at Burchard, and about 5 p. m. started to walk to Russell. A farmer who lived about three miles southwest of Russell and nearly 80 rods from the railroad, saw a person about 6:30 p. m. walking on defendant's track, towards Russell. Twenty minutes or half an hour later the same farmer, as he came out of his barn, observed a locomotive with the tender in front and pulling a caboose going in the same direction. He testifies that the train had no headlight, and estimated the speed at about 30 or 35 miles an hour. The evening was cold, a strong wind was blowing from the northeast and snow and dirt filled the air. In about an hour thereafter plaintiff's intestate was found dead along the track about half a mile north of the highway crossing mentioned. A train or car had run over him.

In this action to recover damages plaintiff alleged that defendant's track for about two miles southwest of Russell was a public highway for

pedestrians, so used by a large number of persons daily with the knowledge, consent, acquiescence and at the invitation of defendant; that defendant's engine was not equipped with headlight and was run at great and dangerous rate of speed without signals; that defendant wilfully and wantonly, with knowledge of the presence of plaintiff's intestate, ran the engine over him. The answer admitted that decedent was killed on its right of way, alleged that at the time he was killed he was a trespasser, that his negligence caused his death, and denied all negligence of its own. There was a recovery. Motion in the alternative for judgment or a new trial being denied, defendant appeals.

We think plaintiff's intestate was not upon defendant's track either by invitation or implied license. He was, no doubt, a trespasser. Defendant's right of way was properly fenced and was equipped with cattle guards at highway crossings. Upon that portion now claimed to be a public highway is a railroad bridge, the crossing of which, without permission by one not a railway employee, is a misdemeanor. G. S. 1913, § 8951. The evidence as to the use of the track came chiefly from farmers living along the right of way for a distance of upwards of three and one-half miles southwest from Russell. These men, some dozen or more, with good opportunity to observe the right of way, and undoubtedly reflecting the actual situation, testified that during the spring, summer and fall seasons three persons a day, on an average, made use of the track or right of way, and during the winter months one person a day would be a fair average. Nothing was said about use after dark except that some young people from the village, and perhaps others, might occasionally walk thereon, if there happened to be an entertainment at the schoolhouse. We think this altogether insufficient to indicate a consent or permission by defendant to the use of the track or bridge by pedestrians. In the memorandum to the order under review the learned trial court expresses very accurately the situation thus: "The use of railway tracks in rural communities by persons walking thereon from place to place has apparently become quite common. And there are probably few such tracks that are not used to a greater or lesser degree. Probably the use shown in this case is no more and no less than could be shown between or in the vicinity of most country villages. The different railway com-

panies throughout the state no doubt have observed and know of this use of their tracks fully as well as the ordinary observer." .

It ought not to be held that this general practice of persons to trespass on inclosed rights of way of railway companies ripens into a license. The absence of all benefit to the railroad and the continual presence of danger both to those so trespassing and to the passengers and property of the railroads forbids the inference of implied consent, and we think plaintiff's intestate was so clearly a trespasser that the court, under its view of the law as expressed in the charge, should have ordered judgment for defendant. The expressions of this court are not uncertain against an inference of implied license from the use by pedestrians of a railroad right of way under conditions similar to those disclosed by this record. In Schreiner v. Great Northern Ry. Co. 86 Minn. 245, 90 N. W. 400, 58 L.R.A. 75, the court says: "That such a user is to a certain extent common is well known, but is unquestionably dangerous, and ordinarily regarded as an intrusion upon the legal rights of the railroads, who maintain their tracks and right of way, except at stations and crossings, for the purpose solely of operating their trains thereon." And in Erdner v. Chicago & Northwestern Ry. Co. 115 Minn. 392, 132 N. W. 339, Mr. Justice Bunn states: "Defendant contends that no invitation can be implied from mere use; that the invitation must be expressed, or evidenced by such a physical condition of the premises, created or permitted to exist by the defendant, as amounts to an assurance to the public that they are invited to enter and travel; that the mere passive or silent sufferance and neglect to eject trespassers or post notices is not enough to establish an invitation. There is much force in defendant's position when we have a case of less frequent, constant and long continued use than we have here. Many people walk on railroad tracks for convenience or pleasure, and it is difficult, if not impossible, for the railroad company to prevent such use of its tracks." However, in that case the place of injury was on the railroad track in a city, between two traveled streets crossing the track, and where, because of no available cross street, the public continually in great numbers used the railroad embankment to pass from one street to the other, and the user was so general, constant and great that those in charge of trains might reasonably anticipate the

presence of persons on the track, and therefore the duty to watch so as to avoid injury to them arose.

But, although plaintiff's intestate was not on the track by defendant's invitation express or implied, it remains to consider whether the place and time of the fatal accident were such that the one in charge of defendant's locomotive and caboose had reasonable ground to anticipate the presence of trespassers on the track. For circumstances may be such that those in charge of a locomotive or train must use care to discover and avoid injury to even trespassers upon the right of way. Ellington v. Great Northern Ry. Co. 96 Minn. 176, 104 N. W. 827, and the Erdner case, just cited, so hold. And that thought seems to have actuated the trial court in denying the motion for judgment. In the instant case the accident occurred after dusk on a very cold and stormy winter night a mile and a half from a small country village and a half mile from a public crossing. On an average at this season of the year but one person a day was wont to walk on the right of way. Night travel, along a railroad track with its well known attendant dangers, surely would not exceed that of daytime. With this situation was the engineer in charge of this locomotive required to anticipate the presence of pedestrians upon the track and govern himself accordingly? We think not. For any one to venture upon defendant's right of way during such a night, with a strong wind blowing in the direction the track ran, so that, walking thereon against the wind, a train approaching from the rear could be neither seen nor heard would be such a foolhardy act that no jury, in our opinion, would be justified in holding the engineer was to anticipate the possibility of its occurrence. No case in this state is authority for the proposition that the failure of the engineer to discover plaintiff's intestate at the time and place was negligence. Many authorities may be cited to the contrary where situations somewhat similar to the one under consideration prevailed. Chesapeake & O. Ry. Co. v. Nipp's Admx. 125 Ky. 49, 100 S. W. 246; Sublett's Admr. v. Chesapeake & O. Ry. Co. 146 Ky. 530, 142 S. W. 1060; Rutherford v. Iowa Cent. Ry. Co. 142 Iowa, 744, 121 N. W. 703; Chesapeake Beach Ry. Co. v. Donahue, 107 Md. 119, 68 Atl. 507, Ward v. Southern Pac. Co. 25 Ore. 433, 36 Pac. 166, 23 L.R.A. 715; Carrier v. Missouri P. Ry. Co. 175 Mo. 470, 74 S. W. 1002, and Frye v. St. Louis, I. M. & S. Ry. Co. 200 Mo. 377, 98

S. W. 566, also reported in 8 L.R.A. (N.S.) 1069, with a note giving a full collation of cases.

In Arkansas and Tennessee engineers are by statute required to keep a lookout for trespassers and others, and the decisions in North Carolina and Texas tend in the same direction, so that authorities cited from those states are not very helpful. Other cases, upon which plaintiff relies, relate to situations within cities, villages or congested neighborhoods. Such are Great Northern Ry. Co. v. Thompson, 199 Fed. 395, 118 C. C. A. 79, 47 L.R.A. (N.S.) 506; Risbridger v. Michigan Cent. Ry. Co. — Mich. —, 152 N. W. 961; Erdner v. Chicago & Northwestern Ry. Co. supra, and many other cases cited in the notes to Frye v. St. Louis, I. M. & S. Ry. Co. 8 L.R.A. (N.S.) 1069, and Martin v. Hughes Creek Coal Co. 41 L.R.A. (N.S.) 264. Certain language employed in Garner v. Trumbull, 94 Fed. 321, 36 C. C. A. 361, supports plaintiff's position, but the facts differentiate that case from the one at bar. There a small child strayed upon the railroad track where, apparently unfenced, it passed through a small settlement. The inhabitants in large numbers crossed back and forth and also traveled along the track. The accident happened on a clear day, and those in charge of the train could have seen the child for more than 600 yards before it was hit. The cases cited by the court as sustaining its view, that the engineer owed a duty of watchfulness to those who there might be upon the track, relate to accidents within or adjoining cities or villages, viz: Taylor v. Delaware & Hudson Canal Co. 113 Pa. St. 162, 8 Atl. 43, 57 Am. Rep. 446; Barry v. New York Cent. & H. R. R. Co. 92 N. Y. 289, 44 Am. Rep. 377; Roth v. Union Depot Co. 13 Wash. 525, 43 Pac. 641, 44 Pac. 253, 31 L.R.A. 855.

There is no evidence suggesting an inference that plaintiff's intestate was discovered by any of defendant's servants before he was struck. Hence no claim can arise of actionable wilful or wanton negligence under the rule of Sloniker v. Great Northern Ry. Co. 76 Minn. 306, 79 N. W. 168; Anderson v. Minneapolis, St. P. & S. S. M. Ry. Co. 103 Minn. 224, 114 N. W. 1123; Mellon v. Great Northern Ry. Co. 116 Minn. 449, 134 N. W. 116, Ann. Cas. 1913B, 843, and Havel v. Minneapolis & St. Louis R. Co. 120 Minn. 195, 139 N. W. 137. And we are constrained to hold that no negligence of any sort on the part of defendant or its servants has been made out.

But there is another obstacle fatal to a recovery. Walking upon the track at the time and place under the then existing weather conditions must be held to show such contributory negligence and assumption of risk that no verdict for plaintiff should be permitted to stand where, as here, it is impossible to predicate it upon wilful or wanton negligence. In Mellon v. Great Northern Ry. Co. supra, where the plaintiff was walking upon an unfenced railroad track approaching a village, under more favorable conditions for ascertaining the approach of a train than had plaintiff's intestate, we concluded that contributory negligence existed. In Havel v. Minneapolis & St. Louis R. Co. supra, the jury were charged that persons walking upon the track of a railroad between stations were guilty of contributory negligence as a matter of law.

The verdict is not supported by evidence. And since we are confident that no legitimate effort can produce evidence which will sustain recovery for the unfortunate death in this case, we deem it our duty to direct judgment.

The order is reversed and the case remanded with direction to render judgment for defendant notwithstanding the verdict.