## ROY T. OLSON v. HECTOR CONSTRUCTION COMPANY, INC.[1]

February 11, 1944.

No. 33,617.

*A. C. Severson,* for appellant.

*Freeman, King & Geer* and *Robert M. Baker,* for respondent.

JULIUS J. OLSON, JUSTICE.

Plaintiff was hurt and his automobile was badly wrecked in a collision with a large truck owned by defendant then being operated by one of its employes while in the performance of a resurfacing job on state highway No. 75 a few miles south of Canby. Plaintiff failed to convince the trial court that he had made a case, for when both parties rested it instructed the jury to return a verdict for defendant. Plaintiff's motion for a new trial being denied, he appeals.

[1]Reported in 13 N. W. (2d) 35.

As indicated above, defendant is engaged in the business of constructing highways and, in connection therewith, owns and operates numerous trucks and other equipment. At the time in question defendant was resurfacing the portion of the highway here involved with a mixture of clay, gravel, and sand. The process required the deposit of this mixture in a large windrow in the center of the highway. After this had been done, a tractor with a 12-foot blade was used to mix, spread, and level off the mixture upon the highway surface. The windrow deposit extended for a distance of one mile to the north of a one-mile area then being completed, over which plaintiff traveled before reaching the point where the collision occurred. As he proceeded on his way north, he observed the spreading machine in operation, together with two large packers.

In the performance of the surfacing work, it is necessary to sprinkle the mixture with water. This was the job of Roy Gorder, who on this occasion had just returned from a trip to Canby, where he had gone to refill his 1,000-gallon tank, carried on a 2½-ton truck. Upon reaching the intersection at the end of the windrow, beyond which the packers were then at work, and while in the proper performance of his job of sprinkling the area next to be spread and packed, Gorder backed his truck into the east lane. This lane was adequately protected by lighted flares set out to warn traffic, but was in the direct path followed by plaintiff on his way to the north. In addition to observing the packers and the spreading outfit above mentioned, plaintiff also noted, upon approaching the intersection and while some 300 to 400 feet from it, that there were flares warning him of work being done beyond them. Because of these warnings, he slowed down his speed "a little." His explanation for not seeing the sprinkling truck is that these flares obscured his vision; that he did not see it until within 15 or 20 feet from it; and that it was then too late for him to stop.

The record clearly shows that defendant had protected its working area with adequate flares and other signals showing that the highway over which plaintiff was proceeding was in the process of

improvement and reconstruction. Plaintiff well knew the purpose of flares. He described them as small round receptacles about five or six inches in diameter, out of which a two-inch flame flickered, thereby providing the warning signs intended. There was no other traffic, and the atmospheric conditions were clear except for the evening darkness. The roadbed was dry. There was some loose gravel upon the intersection, but plaintiff did not recall whether he applied his brakes, although he said he could stop at the rate he was going within 15 to 20 feet. His lights were good and cast a perfect beam over the entire width of the highway at least 250 feet ahead of his car. He had well-functioning four-wheel brakes. The car, in fact, was in perfect working order. He was only 29 years of age when the accident occurred and in full possession of all the mental and physical faculties of a normal young man of that age.

The impact was one of great force. The record shows that the large truck and water tank were pushed back a distance of some six feet. One of the front headlights on it was smashed, and one front fender and the truck frame were bent. Plaintiff's car "was all smashed."

The reason for placing the water tank truck at the place mentioned was that the sprinkling was going to start "at the east side of the road along the windrow." It was the next lane or swath that had to be sprinkled in the course of the work. To put the sprinkler into operation it was necessary to unfold the sprinkler bars located at the rear of the water tank. The driver had just returned to the cab after adjusting the sprinkling bars when the collision occurred. He claims, and there is much other testimony to fortify him, that his clearance lights were in good order and operating, as well as the standard headlights, which he had adjusted to a "low beam" or parking light while he went to the rear of the truck to adjust the sprinkling bars. Plaintiff said that he did not see any lights at all, either clearance or headlights, because of the flickering lights from the flares. He says that because he did not

see any lights they could not have been functioning, *i. e.,* his failure to see *proves* that they were not functioning.

■ We find difficulty in discovering any evidence upon which a charge of negligence on defendant's part can be founded. We can find no similarity of facts in this case at all comparable to those shown in Hockenhull v. Strom Const. Co. 212 Minn. 71, 2 N. W. (2d) 430, upon which plaintiff relies. Be this as it may, the fact remains that the record leaves no doubt that the trial court was right in concluding that contributory negligence on plaintiff's part precluded recovery. We have held in numerous cases that the elements entering into contributory negligence are (1) want of ordinary care on the part of the person injured, and (2) that there be a causal connection between such person's conduct and the accident. When this combination is shown, it legally follows that a plaintiff's negligence bars recovery, since it directly contributes to the result. 4 Dunnell, Dig. § Supp. § 7012. In Frazier v. Anderson, 143 Neb. 905, 11 N. W. (2d) 764, 767, the court defined contributory negligence as "conduct for which plaintiff is responsible, amounting to a breach of duty which the law imposes upon persons to protect themselves from injury, and which, concurring and coöperating with actionable negligence for which defendant is responsible, contributes to the injury complained of as a proximate cause."

■ We have here a situation where plaintiff was informed that there was danger ahead of him. Therefore, it became his duty to exercise care commensurate with the dangers attendant upon new or repair construction. Flares such as those here used are the ones commonly used to warn the wayfarer that there is danger ahead. By means of them the automobile driver is admonished to check his speed and to bring his car under such control that he can stop within the range of his lights when traveling after dark. In Olson v. D. M. & I. R. Ry. Co. 213 Minn. 106, 5 N. W. (2d) 492, we held that the driver of an automobile was guilty of contributory negligence as a matter of law because he entered into an area of dense fog at a rate of speed which precluded his ability to stop after dis-

covery of danger ahead. There the injured plaintiff ran into a moving train upon a railroad crossing. We reversed the trial court because we considered that as a matter of law plaintiff was guilty of contributory negligence. Here, the facts are even more unfavorable to plaintiff. If he was awake, as he claims, he could not have avoided seeing the large truck ahead of him. His car was equipped with excellent headlights, and he should have seen what was immediately beyond the flares. This large truck and tank occupied a space of seven feet two inches. It rose high above the flares. The small, flickering lights of the flares here used, approved no doubt by the highway department as adequate warning signals which would not blind or confuse motorists, could not have obscured plaintiff's vision if he had been exercising due care for his own safety. We think his case is without merit. The order of the trial court is therefore affirmed.

Affirmed.

MR. JUSTICE STREISSGUTH took no part in the consideration or decision of this case.