## SYLVESTER RUTZ v. SAM IACONO.[1]

December 30, 1949.

No. 34,944.

*William H. Freeman* and *Frank J. Zima, Jr.,* for appellant.

*Gordon Rosenmeier, Faegre & Benson,* and *John A. McEachron, Jr.,* for respondent.

LORING, CHIEF JUSTICE.

This action involves personal injuries arising out of an automobile accident in which plaintiff was the passenger and defendant the driver. There was a verdict in favor of defendant. Plaintiff appeals from an order denying a motion in the alternative for an order granting a new trial on the issue of damages only or for an order granting plaintiff a new trial on all issues.

On appeal, plaintiff presents two questions for decision: (1) Was defendant guilty of negligence as a matter of law? (2) Was plaintiff free from contributory negligence as a matter of law? The questions

[1]Reported in 40 N. W. (2d) 892.

of the negligence of both plaintiff and defendant were submitted to the jury. If either of the questions presented here is answered in the affirmative, there must be a new trial. If both are answered in the affirmative, the new trial should be on the issue of damages only. If both questions are answered in the negative, there must be an affirmance.

■ June 26, 1948, plaintiff, Sylvester Rutz, aged 25, and Sam Iacono, defendant, aged 21, drove from Minneapolis to Avon, Minnesota, in Iacono's 1946 Ford convertible automobile to attend a noon wedding. After lunch they decided to visit Rutz's parents in Flensburg, a town about 25 miles north of Avon. Iacono drove while Rutz gave directions as to the route. About the middle of the afternoon, they started back to Avon over the same road. It was a sunny day, and they had put the top down. At a spot about 12 miles south of Flensburg and a quarter of a mile north of Bowlus, the car struck a washout in a half-mile stretch of new construction. Both men were thrown out, and plaintiff was injured. Plaintiff had been riding with defendant most of the day. There was no contention that defendant had not driven his convertible Ford with discretion until shortly before the accident. The road on which they drove, going south from Flensburg to Bowlus, was a well-graded gravel road which had been traveled for some years, except that near Bowlus there was half a mile of new construction. Along the outside edges of this new construction there were washouts which had been caused by heavy rains shortly before the accident. The road was about 30 feet wide. The new construction had been completed about two weeks before the accident. Some of the washouts extended as much as four feet in from the outside edges of the road. Nevertheless, there was abundant room for two cars to meet and pass between the washouts, which were plainly visible to drivers, there being no vegetation on the recently constructed grade. While the older road was well compacted and free from loose dirt or gravel, it had become corrugated into what is commonly known as a washboard surface. On the new construction, however, except for the washouts, the surface of the roadway was smooth, although there was some loose dirt and sand

on it. It was upon this new construction that the accident occurred.

There is a dispute between the parties as to whether defendant speeded up his car on the washboard road a mile or so prior to reaching the new construction and whether the consequent bouncing of the car led plaintiff to protest the speed. However that may be, if there was a protest, defendant reduced his speed before reaching the new grade and was traveling thereon at from 40 to 50 or 65 miles per hour, depending on whether plaintiff, defendant, or a nearby witness is to be believed. Be that as it may and whether there was another protest from plaintiff, there is no dispute that defendant, upon reaching the new construction, found that his car had a tendency to swerve in the loose dirt or sand at the speed he was going. After swerving to the left, defendant guided it toward the right portion of the grade, where, apparently, he expected to avoid the loose material. He testified that he had complete control of the car after he turned it toward the right. Along this right edge, he traveled about 300 feet before he drove into the washout, which caused the car to bounce so violently that it overturned and threw both men out. The car rolled over in the ditch. There was evidence from which it could be inferred that it rolled over three times. There is some dispute in the evidence as to the size of the washout into which defendant drove the car and which defendant testified he did not see until the car struck it. There is some evidence that the washout was four feet long, two feet wide, and a foot deep. There is other testimony that it projected only two feet into the graded surface, was only six to eight inches wide, and four to six inches deep. Perhaps, what it did to the car speaks more convincingly about the size of the pit than does the oral testimony. There is no evidence or contention that there was any obstruction to the view of the washout. There is direct testimony to the contrary. A pit of the smallest size, described in the evidence and unconcealed by vegetation, was obviously large enough for any reasonably alert driver to see in time to avoid it, no matter whether he was going 40 or 50 or 65 miles per hour; a slight turn of the steering wheel would have avoided the pit. Defendant left the middle of the road about 300 feet before he struck the wash-

out. On this record, we must conclude that defendant was negligent as a matter of law in driving a light convertible car on such a road without keeping a lookout for the plainly visible and dangerous washout. The jury should have been so instructed.

■ We consider next whether the court was justified in submitting the question of plaintiff's contributory negligence to the jury. This court has defined the measure of care required of a guest passenger. In Burgess v. Crafts, 184 Minn. 384, 386, 238 N. W. 798, 799, we said:

"* * * A guest passenger is of course required to exercise ordinary care for his own safety, but that does not mean that he has to assume responsibility for the management of the car. This court has upon occasion defined the duties of a guest and laid down the rule that he is not required to be constantly on the alert to discover dangers which the driver may perchance not discover. When he is riding with an apparently competent driver his duty requires him to warn the driver of a danger which he has become aware of and which he has reason to believe the driver has overlooked or is not aware of."

Wicker v. North States Const. Co. Inc. 183 Minn. 79, 235 N. W. 630; Goldberg v. Cook, 206 Minn. 450, 289 N. W. 512; Kordiak v. Holmgren, 225 Minn. 134, 30 N. W. (2d) 16.

In the case at bar, plaintiff had been riding with defendant most of the day. As stated above, there was testimony that on two occasions shortly before the accident he had protested against defendant's fast driving. Defendant denies that he received such protests; at any rate, he drove upon the stretch of new road at a speed which caused his car to swerve in the loose dirt in the middle of the roadway. It was here that plaintiff testified that he again cautioned defendant about speed. Defendant denies this protest and contends that he was going no more than 42 miles per hour. He therefore swung to the right to avoid the loose dirt or gravel, and with his car, as he says, under complete control drove into the washout which, he testified, he did not see. Obviously, at any speed testified to by any wit-

ness it would have been a simple matter to veer away from the washout and thus avoid the upset. The day was clear and visibility was good. Even had plaintiff seen the washout, he had no reason to believe that defendant did not see it until a warning would have been too late. However, he, too, apparently was not looking at the road, because there is no evidence that he saw the washout. As a guest passenger, ordinary care did not require him to keep a lookout or to warn the driver of obstructions unless he became aware of them and also aware that the driver was unaware of them.

The law of contributory negligence as it relates to guest passengers is that the jury must be able to find from the facts not only that the guest passenger was aware of the danger and aware that the driver was oblivious to it, but also that a protest or warning might have averted the accident. Jacobsen v. Ahasay, 188 Minn. 179, 246 N. W. 670; Findley v. Brittenham, 199 Minn. 197, 271 N. W. 449; Shockman v. Union Transfer Co. 220 Minn. 334, 19 N. W. (2d) 812; Kapla v. Lehti, 225 Minn. 325, 30 N. W. (2d) 685. In the case at bar, it was defendant's failure to keep a lookout, rather than excessive speed, that was the proximate cause of the accident. Contributory negligence should not have been submitted to the jury.

The order appealed from is reversed, and a new trial is ordered on the question of damages only.

ON APPEAL FROM CLERK'S TAXATION OF COSTS.

On February 10, 1950, the following opinion was filed:

PER CURIAM.

The opinion in this case was filed and notice thereof served upon both parties to the appeal on December 30, 1949. Under Supreme Court Rule XV (222 Minn. xxxvii), costs and disbursements shall be taxed in the first instance by the clerk upon two days' notice by the taxing party to his opponent, and such taxation shall be within 15 days after the filing of the decision.

In the case at bar, costs were not taxed by the appellant, who prevailed, until January 23, 1950, more than 15 days after the filing of the decision. In that situation, the losing party, under Rule XVI,

was entitled to have judgment entered without inserting therein any allowance for costs and disbursements. The prevailing party may have been misled by an impression that the filing of a petition for rehearing stayed the taxation of costs as well as the entry of judgment. It does not do so under Rule XX (222 Minn. xxxviii), which specifically states that the filing of such petition does not stay the taxation of costs. Consequently, the taxation of costs by the clerk must be vacated and the judgment in favor of appellant entered without an allowance for costs and disbursements.

It is so ordered.