OLGA KELLING v. FLOYD O. HOWARD, d.b.a. HOWARD CONSTRUCTION COMPANY, AND ANOTHER.

81 N. W. (2d) 85.

February 15, 1957—No. 37,008.

*Gallagher, Madden & Zimmerman,* for appellant.
*Smith, McLean & Peterson,* for respondent.

MURPHY, JUDGE.

This suit grows out of an accident which occurred on October 27, 1955, on County Aid Road No. 2 about two miles south of Janesville, Minnesota. The defendant Howard, a road contractor, had excavated a ditch across the highway on the afternoon of the accident. The ditch, which extended across the road, was about 16 to 17 feet in depth. Dirt was piled on both sides of the excavated area to a height from 6 to 12 feet. The accident happened about 6 p. m. Howard placed a pine board about 2 feet long and 1 foot high with black lettering containing the words, "Road Closed" on the northerly edge of the depression. He also placed a flare on each side of the ditch. Plaintiffs entered this road from the village of Janesville. At a point within the village limits, about 150 feet south of the Chicago & Northwestern Railroad tracks, Howard set up a board 4 or 5 feet long and 1 foot wide with the words "Road Closed" painted on it. It was set upon steel posts about 4 feet high. He also placed a temporary detour sign consisting of another board 2 feet long and 1 foot wide below the "Road Closed" sign and at each end placed torch flares. This road was not blocked and, being within

the village limits, the road was used in connection with two side streets as well as by farm residents located between Janesville and the site of the accident. In the two miles intervening between the village and the point of the accident there were no illuminated warning signs.

On the afternoon in question Olga Kelling, age 74, was an occupant of an automobile driven by her husband, Edward Kelling, age 80. They had visited in Waseca and on their way home passed through Janesville by way of County Aid Road No. 2. This road is about 26 feet wide and of black tarvia surface, the same color as the dirt embankment. There was a gradual decline in the road from a point about one block north of the ditch and a gradual incline from the ditch to the south. Kelling had driven this road many times. He testified that he had seen flasher signs at the railroad tracks but did not see any other signs. He was driving at a rate of about 25 to 35 miles per hour when he drove into the dirt embankment. His lights were working properly. Mrs. Kelling was seated in the front seat with her husband. She also saw the flasher lights at the railroad tracks in Janesville but did not observe any other signs. She noted other cars coming from the south as they traveled toward the place of the accident.

The court dismissed the action as to the defendant County of Waseca at the close of the testimony. Verdicts were returned for the other defendant in the actions of both Edward Kelling and Olga Kelling. No appeal was taken by Edward Kelling. The plaintiff Olga Kelling appeals from the order of the district court denying her motion for a new trial on the issue of damages alone or in the alternative for a new trial of the action on all issues. The order is attacked on the ground that the court erred in instructing the jury on the issue of contributory negligence as applied to the plaintiff Olga Kelling.

In cross-examination by the defendants, Mrs. Kelling testified that as they drove along immediately prior to the accident the headlights on the automobile were working properly and that she could see objects at an extended distance of about 400 feet in front of the

car and as they approached the scene of the accident she was looking carefully ahead and suddenly the car hit something and she did not know what it was. She further testified:

"Q. Is it your practice to help your husband look ahead when he is driving the car?

"A. Oh, yes, I always do.

"Q. And you were doing it on that particular day, is that right?

"A. Yes.

"Q. And you were doing it just as the accident happened, helping him look out?

"A. Looking out, yes."

In his instructions to the jury the trial court generally charged with reference to the duty of a passenger in a motor vehicle; and, apparently with reference to the testimony of the plaintiff above set out, gave the following instruction:

"* * * The evidence appears here, however, without dispute, based on her own testimony, that she did to some extent participate in keeping a lookout. * * * should you decide that she voluntarily assumed some of the obligation of driving this vehicle then, of course, she would be required to exercise the standard of care which a reasonably prudent person under those circumstances would have exercised, and if she were assuming the responsibility of keeping a lookout for the driver or participating in the management or control of that vehicle in any way then, of course, she would be faced with the obligation under the law of negligence of exercising reasonable care to warn the driver if she did observe anything, or having assumed the obligation of keeping a lookout, if she did, she would have the obligation of maintaining a reasonable and proper lookout under the circumstances."

It should be noted there was no evidence of excessive speed, reckless driving, physical disability or incompetence of the driver, or other circumstances indicating a need for the wife to assist her husband in the operation of the car. In Hartel v. Warren, 196 Minn. 465, 467, 265 N. W. 282, 283, we said there was no reason "why a

wife riding with her husband is required to be on watch at all times" and that an ordinarily normal, prudent woman "would not be expected to be constantly on guard to avoid dangers which the driver should discover." In Rutz v. Iacono, 229 Minn. 591, 595, 40 N. W. (2d) 892, 895, we observed:

"The law of contributory negligence as it relates to guest passengers is that the jury must be able to find from the facts *not only that the guest passenger was aware of the danger and aware that the driver was oblivious to it, but also that a protest or warning might have averted the accident.*" (Italics supplied.)

It is our view that the instruction in the case before us left the jury with the impression that a passenger who is in the use and enjoyment of normal and ordinary faculties of observation, or even one who has a lively awareness of the ever-present hazards of the road, may share responsibility for the operation of the vehicle. If this were true, only a passenger entirely oblivious to his surroundings and circumstances would be spared the imputation of negligence.

Here, the evidence relied upon to support the charge to the jury is found in plaintiff's admissions that she was doing only what an ordinarily perceptive passenger would do under normal conditions. There is no evidence in the record to establish that the plaintiff undertook to definitely assume a continuous responsibility of observing and warning the driver as to possible hazards. The rule of law by which we are guided is set forth in 13 Dunnell, Dig. (3 ed.) § 7026a, which states that, where one is riding with an apparently competent driver, "duty requires him to warn the driver of a danger which he has become aware of, and which he has reason to believe the driver has overlooked or is not aware of." Burgess v. Crafts, 184 Minn. 384, 238 N. W. 798; Hartel v. Warren, 196 Minn. 465, 265 N. W. 282; Wicker v. North States Const. Co. Inc. 183 Minn. 79, 235 N. W. 630.

There must be some unusual circumstances such as incompetence or carelessness of the driver, his heedlessness of some danger known to the passenger, before there is imposed upon the passenger a duty to take some affirmative action to preserve his own safety. Here,

Mrs. Kelling saw no signs or lights either at the place of the embankment or at the point just south of the tracks at Janesville. While it is true that there was a "Road Closed" sign in the village of Janesville, the road was nevertheless open for travel and a bypass was provided at the side of the excavation. There is a question as to the adequacy of the detour sign as well as the flares at the embankment. The record does not indicate a situation where the danger might have been apparent only to the passenger or where the passenger had reason to believe that the driver was incompetent, careless, or heedless of danger. Wicker v. North States Const. Co. Inc. *supra*; Rutz v. Iacono, *supra*.

Reversed and new trial granted.

JUDGE FRANK T. GALLAGHER took no part in the consideration or decision of this case.