ROGER HANSON v. WILLIAM BAILEY AND OTHERS. MORSE BROTHERS AND ASSOCIATES, INC., AND ANOTHER, APPELLANTS-RESPONDENTS.

83 N. W. (2d) 252.

May 10, 1957—Nos. 37,010, 37,016.

496

*Spellacy, Spellacy & Lano,* for appellant Bailey.

*Lewis, Hammer, Heaney, Weyl & Halverson,* for appellants Morse Brothers and Jay W. Craig Company.

*Cohen, Kaner and Dubow,* for respondent Hanson.

MATSON, JUSTICE.

In three personal injury actions consolidated for trial, all of which arose out of the same automobile accident on a road under construction, we have two separate appeals from a judgment, one by the two defendant contractors (Morse Brothers and Associates, Inc., and Jay W. Craig Company—both of whom are hereinafter sometimes referred to as defendant Morse) and the other by defendant driver William Bailey.

A cross-claim for damages for personal injuries was asserted against defendant contractors by defendant Bailey, and in turn the defendant contractors asserted a cross-claim for indemnity against defendant Bailey. The trial court directed a verdict against defendant Bailey on issues of negligence and proximate cause. The jury brought in verdicts in favor of each of the three plaintiff passengers occupying the Bailey automobile and also for damages sustained by

a fourth plaintiff, as father of one of the passengers, and for a fifth plaintiff, as the owner of the Bailey automobile.

The trial court denied motions for a new trial, and pursuant to its orders of denial, the judgment was entered from which these appeals were taken.

We are concerned with issues as to: (1) The duty of a road contractor to give warning of construction hazards to trespassing motorists who ignore ROAD CLOSED and DETOUR signs at the entrances or termini of a construction zone and travel through the construction area; (2) the negligence of an automobile driver who enters a construction zone; (3) the negligence of and the assumption of risk by guest passengers in an automobile traversing a road under construction; and (4) finally, the right of a defendant road contractor to indemnity from a defendant driver for any damages awarded.

The accident occurred shortly after 9 o'clock on the evening of July 26, 1954, on a portion of Highway No. 53 which was then under construction. The entrance to the 2-mile construction zone was about 4 miles north of Virginia, Minnesota, at the junction of U. S. Highways Nos. 53 and 169 or at what is otherwise known as the North Wye. Not later than July 14, 1954, the Minnesota Highway Department erected barricades at the entrance or southerly terminus of the construction zone; established a detour; and set out signs stating "Road Closed" and pointing the way to the detour. After the erection of the barricades, work was begun on the shoulders of the road. No construction work was done, however, on the paved portion of the road until the day of the accident, July 26. Prior to that day, some persons had driven around the barricades and continued to use the road. During the day of July 26 the blacktop was stripped from the road area adjacent to and under a railroad viaduct located about seven-tenths of a mile from the southern terminus of the construction zone. On either side of the excavation under the viaduct the blacktop was pushed into piles 3 to 5 feet high which extended clear across the paved portion of the road but left a passageway on the southwest shoulder of the road.

In a drizzling rain on the exceptionally dark night of July 26, defendant Bailey, at about 9 p. m., drove his mother's 1951 Cadillac sedan around the barricade at the southern end of the construction area. The conspicuous road barricade was well lighted by flares and Bailey and his three guest passengers were all aware that they were entering a construction zone. Bailey and plaintiff Roger Hanson had been over the road the previous day. Plaintiff Ann Shanedling had passed over it that morning. Despite the road construction work, Bailey and his passengers proceeded toward Sand Lake, which is north of the construction zone, to attend a picnic. Rounding a curve in the highway, Bailey saw—only about 300 or 400 feet away—the lights of an approaching or southbound car which then appeared to him to be pulling onto the highway from the southwest shoulder of the road. Although he could not see beyond the lights of the oncoming car, Bailey did not slacken his admitted speed of 40 to 45 m. p. h. as he passed it. Immediately after passing this oncoming car Bailey, for the first time, saw directly in front of him, 24 to 30 feet away, the windrow of tarvia extending across the highway. He was unable to stop and the car struck the windrow of tarvia and gravel. When the car came to rest the front part of it was over the crest of the pile. Although defendant Morse Brothers had placed in front of the windrow two lighted flares, one of which was still burning a short time before the accident, Bailey testified that he saw no lighted flares at the pile before hitting it. The driver of the ambulance, who arrived on the scene a short time thereafter, testified that neither flare was lit when he arrived. All of the occupants of the car were injured and the car was damaged.

◼ Under the trial court's charge, the jury could reasonably find that defendant Morse ought reasonably to have anticipated that motorists would enter the construction zone and further that such defendant Morse was negligent in not providing adequate signs to warn trespassing motorists of a road construction hazard such as the windrow of tarvia piled across the highway. Defendant Morse was in possession of the road construction land area pursuant to a contract with the state, and any motorists entering upon that

area were trespassers. The trial court in charging the jury as to the law applicable to defendant Morse, as the possessor of the construction area, combined in substance the wording of Restatement, Torts, §§ 333 and 335. These two sections, insofar as here pertinent, provide:

§ 333. "* * * a possessor of land is not subject to liability for bodily harm caused to trespassers by his failure to exercise reasonable care

"(a) to put the land in a condition reasonably safe for their reception, or

"(b) to carry on his activities so as not to endanger them" unless he

§ 335. "* * * knows, or from facts within his knowledge should know, that trespassers constantly intrude upon a limited area thereof, [and if he knows or reasonably ought to know of the likelihood of their intrusion, he] is subject to liability for bodily harm caused to them by an artificial condition thereon, if

"(a) the condition

"(i) is one which the possessor has created or maintains and

"(ii) is, to his knowledge, likely to cause death or serious bodily harm to such trespassers and

"(iii) is of such a nature that he has reason to believe that such trespassers will not discover it and

"(b) the possessor has failed to exercise reasonable care to warn such trespassers of the condition and the risk involved therein."

■ Defendant Morse contends that Restatement, Torts, § 335, is inapplicable since it refers only to trespassers who constantly intrude upon only *a limited area* of the possessor's land. This contention is based upon a misconception of the meaning of the words *a limited area thereof*. The term "limited" is used not in the sense of "small" or as necessarily referring only to a fractional part of the whole, but rather in the sense of a "delimited" or clearly defined

area.[1] Here the trespass was over a clearly defined area, the paved portion of the roadway. Although the trial court ought, under the facts of this case, to have defined the word "limited," the error was not prejudicial to defendant contractors. Since Restatement, Torts, §§ 333 and 335, correctly enunciate the applicable law, no prejudicial error occurred.

■ The jurors were properly instructed that the duty of defendant Morse was that of exercising reasonable care. Whether a contractor in lawful possession of a road construction zone has given a reasonably adequate warning of construction hazards to trespassing motorists whom he knows, or reasonably ought to know, will enter the construction zone, despite conspicuous "Road Closed" signs at the zone's termini, is usually a question of fact for the trier of fact. The applicable principles are well stated in Restatement, Torts, § 334, *comment d* (see, § 335, *comment a*), as follows:

"*Effect of signs prohibiting trespassers.* Knowledge of the persistent trespasses or of facts which should inform the possessor thereof, is necessary to subject the possessor to liability * * *. Therefore, he is not subject thereto if he has taken steps which a reasonable man would believe to be effective in excluding trespassers or in putting an end to their trespasses, unless he discovers that they are ineffective or he himself has some peculiar reason to believe that they will not be effective. Thus, it is not enough that the possessor has posted notices to the effect that 'trespass is not permitted' or that 'trespassers will be prosecuted,' if he knows or has reason to know that such notices are disregarded either as a matter of general custom or at the particular place. If the steps taken by the possessor, no matter how reasonable when taken, prove to his knowledge ineffective, he is required to take into account the probable presence of trespassers within such area and to conduct his activities with reasonable regard for their safety."

[1]See, Prosser, Torts (2 ed.) § 76, pp. 437 to 438; 25 Wd. & Phr. (Perm. ed.) pp. 305, 306; Cheyney v. Smith, 3 Ariz. 143, 155, 23 P. 680, 685. The typical case is that of the frequent use by trespassers of a particular part of a railway track. Hanks v. G. N. Ry. Co. 131 Minn. 281, 154 N. W. 1088.

In the light of the duty to exercise reasonable care, the jury could reasonably find that defendant Morse was negligent in failing to provide adequate flares or other devices to warn trespassing motorists of the danger of collision with the windrow of tarvia.

■ In passing around the barricade to enter the construction zone, defendant driver Bailey and his passengers violated M. S. A. 161.03, subd. 7. Although this section provides that the driver or owner of a car going around a state-erected barricade is guilty of a misdemeanor, the statutory language is indicative of the purpose of protecting the work done at the site rather than of providing a safety measure for the protection of travelers. In view of this construction, it follows that a violation of the statute is not prima facie evidence of contributory negligence. Furthermore, there is nothing in the record to justify a determination that the act of entering the construction zone of itself constituted negligence as a matter of law.

Was defendant driver Bailey negligent as a matter of law after he had once entered the construction zone? An automobile driver who knowingly ignores conspicuous "Road Closed" and "Detour" signs posted at the entrance to a portion of a highway which, under authority of law (§ 161.03, subd. 7) has been barricaded and withdrawn from public use for construction purposes enters and drives through the construction zone as a trespasser,[2] and while so trespassing he must, in the exercise of ordinary care for his own safety, anticipate at all times that the normal progress of the construction work may quickly convert an earlier condition of safety into one of danger,[3] and therefore, ordinary care commensurate with the dangers attendant upon construction work[4] requires that he proceed with

---

[2]Restatement, Torts, § 329. A person residing adjacent to the portion of a highway under construction, who has no other route of access and who has therefore been given permission to travel through the construction zone, is not a trespasser, but he must, of course, exercise ordinary care commensurate with the known or reasonably anticipated construction hazards. See, Froden v. Ranzenberger, 230 Minn. 366, 41 N. W. (2d) 807; 5A Blashfield, Cyc. of Auto. Law and Practice (Perm. ed.) § 3330.

[3]Fenske v. Kramp Const. Co. 207 Wis. 397, 241 N. W. 349.

[4]Olson v. Hector Const. Co. Inc. 216 Minn. 432, 435, 13 N. W. (2d) 35, 37.

caution and exercise a constant lookout for excavations, obstructions, and activities incident to the progress of the work.[5] Once Bailey entered the area it became his duty to exercise care commensurate with the dangers attendant upon new or repair construction work.[6] The reasonableness of his speed must be gauged by the surrounding actual and potential hazards of which he had knowledge or which he should reasonably have anticipated.[7] Since highway work is progressive, the fact that a portion of a closed road was not worked on earlier in the day, yesterday, or last week is no assurance that the work may not have progressed in the meantime so as to develop new hazards.[8] Bailey ought to have anticipated the possibility of obstructions on the road, a factor which must be considered in determining the reasonableness of his speed. It is inconceivable that on a rainy night a reasonable man would proceed on a road closed for construction work at a speed of approximately 45 m. p. h. and, in addition, fail to slow down in driving around a curve and again when passing an oncoming car beyond whose lights he could not see. As a result of his unreasonable speed under the conditions then existing, he was suddenly confronted with the hazardous windrow of tarvia at the short distance of only 24 to 30 feet ahead when it was too late to bring his car under control. Under the circumstances, the fact that the approaching car came onto the highway from the shoulder of the road should have served as a warning to Bailey that the road ahead was obstructed. The trial court was correct in holding Bailey negligent as a matter of law.

◼ Were the plaintiffs negligent as a matter of law after they once had entered the construction zone? A passenger must exercise reasonable care, but that does not mean that he must assume any responsibility for the management of the car, nor that he is required to be constantly on the alert to discover dangers which the driver

[5]Miller v. Abel Const. Co. 140 Neb. 482, 300 N. W. 405; Myers v. Sanders, 189 Miss. 198, 194 So. 300; 5A Blashfield, Cyc. of Auto. Law and Practice (Perm. ed.) § 3330.

[6]Olson v. Hector Const. Co. Inc. *supra.*

[7]Simon v. Carroll, 241 Minn. 211, 62 N. W. (2d) 822.

[8]Fenske v. Kramp Const. Co. 207 Wis. 397, 241 N. W. 349.

may not discover. Burgess v. Crafts, 184 Minn. 384, 238 N. W. 798. A duty to take some affirmative action to preserve his own safety is imposed on the passenger only under some unusual circumstance such as incompetence or carelessness of the driver. Kelling v. Howard, 249 Minn. 75, 81 N. W. (2d) 85. Even when the passenger discovers some hazard, before he is chargeable with contributory negligence, he must not only be aware that the driver is oblivious of the danger but there must be facts from which it can be found that he could have given a warning which might have averted the accident. Kelling v. Howard, *supra;* Rutz v. Iacono, 229 Minn. 591, 40 N. W. (2d) 892. Since there is no evidence that any of the plaintiff passengers saw the windrow in time to give Bailey any warning which would have enabled him to avoid the accident, we conclude that the evidence justified the jury's finding that plaintiffs were not contributorily negligent.

■■■ Defendants contend that, on entering the closed area, plaintiffs assumed the risk of injury from hazards attendant on construction work. Although plaintiff passengers did assume greater risks in traversing through a construction zone than they would have assumed in passing over a road not under repair, this fact does not insulate the defendants from the consequences of their negligence. Although they assumed such risks as are inherent in construction work, it cannot be said that plaintiff passengers assumed risks which arose as a proximate cause of the negligence of any of the defendants. Assumption of risk is to be distinguished from contributory negligence in all cases save where an assumption of risk is so unreasonable that it also constitutes contributory negligence.[9] In accompanying defendant driver Bailey into and over the construction zone, it cannot be said that the passengers *unreasonably* exposed themselves to a known danger, or a danger that should have been known to them, since they could reasonably assume that the defendant driver would use ordinary care commensurate with the attendant construction hazards. One need not anticipate negligence of another

[9]Schrader v. Kriesel, 232 Minn. 238, 45 N. W. (2d) 395.

until he becomes aware of such negligence.[10] We do not here have the situation which arises in those cases where the plaintiff, with knowledge of the risk, has entered voluntarily into some relation with the defendants which necessarily involves the known risk and so is regarded as tacitly or impliedly agreeing to take his own chances irrespective of the conduct of others.[11]

■ Defendant Bailey and defendant Morse each claims indemnity against the other. Defendant Morse contends that the primary negligence was Bailey's, but Bailey asserts that Morse was guilty of wilful and wanton misconduct. Although the terms "indemnity" and "contribution" are sometimes used interchangeably, they must, in fact, be distinguished. Indemnity shifts the entire loss from one tortfeasor who has been compelled to pay it to the shoulders of another who should bear it instead. Contribution, on the other hand, distributes the loss among tortfeasors by requiring each to pay his proportionate share.[12] As a general rule there is, of course, no right

[10] 13 Dunnell, Dig. (3 ed.) § 7022.

[11] Consequently, the cases which hold that a spectator at a sports event assumed the risks involved in the play are not applicable here. E. g., Modec v. City of Eveleth, 224 Minn. 556, 29 N. W. (2d) 453. Also distinguishable are the cited cases involving assumption of the risk by automobile passengers. Sharp v. Johnson, 248 Minn. 518, 80 N. W. (2d) 650; Landru v. Stensrud, 219 Minn. 227, 17 N. W. (2d) 322. In the Sharp case the only negligence with which the plaintiff passenger sought to charge the driver was that he started the trip during a snowstorm. It was held that, since the plaintiff herself had relayed weather information to the driver, she was as well acquainted with the conditions as the driver and had assumed the risk of injury arising out of the storm. And in the Landru case a car in which ice fishermen were riding went through the ice on the lake. It was held that the plaintiff passenger assumed the general hazards encountered in going on the ice and that, since no negligence in driving in this particular area was shown, the plaintiff could not recover from the driver. It is clear that in both these cases the absence of negligence in the driver's handling of his car after he and his passengers have undertaken to drive under hazardous conditions distinguishes them from the present case. See, Prosser, Torts (2 ed.) § 55; 13 Dunnell, Dig. (3 ed.) § 7023.

[12] See, Prosser, Torts (2 ed.) § 46; cf. Gugisberg v. Eckert, 101 Minn. 116, 111 N. W. 945.

to indemnity between joint wrongdoers.[13] As an exception to the general rule, Minnesota has allowed indemnity in the following limited situations,[14] none of which is applicable in this case:

(1) Vicarious liability;

(2) Torts committed by one employed by another to do an act not manifestly wrong;

(3) Liability incurred by reliance on another's performance of a contractual obligation;

(4) Failure of one to discover the negligence of another.

Under Restatement, Restitution, § 94, indemnity may be had by a person who has become liable in tort to another because of an injury caused by his negligent failure to protect the other from the tortious conduct of a third person. The rule applies, however, only where the conduct of the claimant is such that it would not bar him from an action against the third person had the claimant or his property been harmed. Restatement, Restitution, § 94, *comment b.* In the present case both defendants were found negligent and the negligence of each was a proximate cause of the accident, which would bar him from recovery against the other. Clearly, under the principles of § 94 neither may have indemnity.

Defendant Morse contends, however, that it is entitled to indemnity under Restatement, Restitution, § 97, which provides that a negligent tortfeasor may recover from one who knew of the peril but recklessly or intentionally failed to avoid it and thereby injured a third person to whom both are liable. Since there is no evidence that Bailey was recklessly or wilfully negligent after discovering the obstruction on the highway, and since the right to indemnity does not exist under the rule of this section merely because the negligence of the claimant is prior in point of time to the negligent

---

[13] 9 Dunnell, Dig. (3 ed.) § 4342, and cases cited therein.

[14] 37 Minn. L. Rev. 470, 475; see, Prosser, Torts (2 ed.) § 45. Defendant Morse cites Fidelity & Cas. Co. v. Northwestern Tel. Exch. Co. 140 Minn. 229, 167 N. W. 800, which is an example of indemnity for one who fails to discover the negligence of another.

conduct of another (*comment a*), it is obvious that neither defendant is entitled to indemnity under this theory.[15]

It follows that no right of indemnity exists in favor of either defendant against the other.

By stipulation of the parties the decision herein is applicable to and determinative of appeals Nos. 37,009, 37,011, 37,015, and 37,017.

The judgment of the trial court is affirmed.

Affirmed.

---

[15]In their notes to Restatement, Restitution, § 97, the reporters point out that when there is concurrent negligence contribution is desirable even though indemnity is not. Minnesota is one of a few states which does permit contribution when liability is based on concurrent simple negligence. Gronquist v. Olson, 242 Minn. 119, 64 N. W. (2d) 159; 4 Dunnell, Dig. (3 ed.) § 1924.