W. HODGMAN AND SONS, INC., a corporation, and Florian N. Nemmers, Appellants,

v.

Mark J. MOTIS, Appellee.

No. 16185.

United States Court of Appeals
Eighth Circuit.

June 26, 1959.

Harry H. Peterson, Minneapolis, Minn. (Geoffrey J. Mahoney and Mahoney and Mahoney, Minneapolis, Minn., were with him on the brief), for appellants.

Gerald S. Rufer, Fergus Falls, Minn. (Lashkowitz & Lashkowitz, Fargo, N. Dak., and Rosengren, Rufer and Blatti, Fergus Falls, Minn., were with him on the brief), for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and MATTHES, Circuit Judges.

MATTHES, Circuit Judge.

Mark J. Motis, a citizen of North Dakota, recovered a verdict and judgment against W. Hodgman and Sons, Inc., a Minnesota corporation, and Florian N. Nemmers, a citizen of the same state, as damages for personal injuries and property damages sustained as the result of a collision between plaintiff's automobile and motorized equipment owned by Hodgman and operated by Nemmers in connection with a road construction project.

Defendants' motions for directed verdict were denied as was their motion for judgment notwithstanding the verdict. This appeal followed.

In this court the defendants have advanced a two-pronged contention. They urge that under the Minnesota law, which must be applied, the evidence presented no issue of fact as to (1) whether the defendants were negligent, and (2) whether the plaintiff was guilty of contributory negligence; that defendants' freedom from negligence and plaintiff's contributory negligence were conclusively established, and that consequently the court should have directed a verdict in their favor.

We have these undisputed facts: The collision occurred on July 21, 1956, shortly after 9 o'clock P.M. on Highway No. 55, which extends generally in an east and west direction between Nashua and Wendell, Minnesota. The highway was level and straight. Hodgman was engaged under contract with the State of Minnesota, in resurfacing the highway with "blacktop," the project extending a distance of 10 miles. As a part of the operation, a windrow of gravel approximately 3 feet deep, and 7 feet wide at the base extended along and upon the north side of the highway at the scene of the accident. Because of the windrow, the travel portion of the highway was reduced to 23 feet at or near the scene of the collision. Prior to the time of the occurrence the general site of the construction operations was about a mile and a half west of the accident scene.

At the time of the litigated incident, Nemmers was operating a McCormick diesel farm type tractor, which in turn pulled a "packer," eastwardly on the north side of the highway, which was that portion thereof used by westbound traffic. The tractor had two front wheels, but dual wheels in the rear. It was 8½ feet in width. The packer had 13 wheels, 6 in front, 7 in the rear, and it was 7 feet, 4 inches in width, 8 feet long. This roller or packer consisted of a "square box," filled with gravel, resting on these wheels, and it weighed several tons. In describing the appearance of the tractor, Nemmers testified that " * * * the actual silhouette of the tractor was a sort of a, you might say,

skeleton form without a lot of body or fender or sheet metal of that kind on it." As the name implies, the equipment was being used for the purpose of packing the roadbed preparatory to the blacktopping thereof.

The highway remained open for travel, but there were signs at each end of the project indicating the beginning of the construction zone. Plaintiff was generally familiar with the highway, and about a "half hour or so" prior to the collision, he had driven eastwardly with two passengers. At that time he observed the construction work, saw that there were windrows of gravel "at different places," some in the middle and some on the side, and it was possible that he saw the packer. After leaving one of the passengers at Elbow Lake, he started his return trip. It was then dark. Riding with plaintiff in the front seat of his automobile was a lady friend whom he married prior to the trial. As plaintiff left Wendell, he observed a sign which had printed thereon: "Enter 12 mile construction zone. Watch for signs." As he proceeded westwardly, plaintiff was driving on the north or righthand side of the highway, and was traveling at a speed of 50 miles per hour, which was the maximum speed for night driving in Minnesota. The headlights were on, his vision was good and he and his companion were looking straight ahead at all times. Plaintiff recalled seeing flares which indicated the beginning or end of a windrow of gravel. Neither he nor his wife saw any additional signs or flagman. When plaintiff's automobile was about 150 feet from the point of impact he observed for the first time an object on his side of the highway, but he didn't know what it was, "(i)t was just a big gray blob." In the interval occurring between the time he first saw the object and the collision, plaintiff applied his brakes and reduced the speed of his automobile. He testified that he started to turn to the left, "(t)hen I froze because I—I didn't know if there was another gravel pile to my left or not, and I didn't know what to do." There was

a violent impact which resulted in serious injuries to plaintiff.

There is a decided dispute in the evidence as to whether the headlights mounted on the front of the tractor were burning. Nemmers testified they were on high beam and cast a light 150 feet ahead. On the other hand, plaintiff testified that he first saw the object when it was picked up by the lights on his automobile about 150 feet away, and that what he saw appeared to be a "big gray blob." Mrs. Motis testified that she did not see any lights as they approached the tractor. The evidence indicated there were two flares stuck into the gravel at the rear corners of the packer box, but the evidence also indicates that because the tractor was somewhat wider than the packer ensemble, these flares could not be seen by one approaching the tractor head-on.

In ruling adversely to defendants on their motion for judgment notwithstanding the verdict, the trial court observed that inasmuch as the highway was open for public travel at the time of the accident, the questions of defendants' negligence and plaintiff's contributory negligence were factual questions for the jury; that in resolving all disputed facts in favor of plaintiff, there was sufficient evidence to support the verdict under Minnesota law.

Defendants argue that the teachings of the Supreme Court of Minnesota in Olson v. Hector Const. Co., 216 Minn. 432, 13 N.W.2d 35, and Hanson v. Bailey, 249 Minn. 495, 83 N.W.2d 252, are dispositive of the questions we have for determination. Both of these cases presented the issues of negligence of the road contractor and contributory negligence of the motorist.

It cannot be denied that there is factual resemblance between Olson and the instant case. There, as here, the collision occurred on a highway which remained open to the traveling public while the contractor carried on a resurfacing project; the collision occurred in the "evening darkness," and, as here, plaintiff's portion of the highway was blocked by a vehicle under the contractor's control. But unlike our case, in Olson, plaintiff's driving lane " * * * was adequately protected by lighted flares set out to warn traffic * * *," 13 N.W.2d at page 36. Moreover, as plaintiff traveled through the area, he observed various construction machines at work, and while 300 to 400 feet from the scene of collision, saw the flares warning him of work being done. The Court stressed that the contractor had protected its working area with flares and other signs, and that plaintiff knew the purpose of the flares. Also significant was plaintiff's ability to stop his automobile at the speed he was going, within 15 to 20 feet. The foregoing should suffice to demonstrate that logically, it cannot be said that Olson is on "all fours" with the facts here presented.

It should also be pointed out that, while the Supreme Court in Olson made the observation that "(w)e find difficulty in discovering any evidence upon which a charge of negligence on defendant's part can be found," (distinguishing Hockenhull v. Strom Const. Co., 212 Minn. 71, 2 N.W.2d 430, infra) the case actually turned on plaintiff's contributory negligence, and on that issue, the Court ruled plaintiff was barred from recovering.

■ If, as defendants would have us do, we struck down this judgment on the basis of the decision in Olson, we would in effect be declaring that the substantive law of Minnesota completely insulates a road contractor from liability to a motorist for injuries sustained while proceeding upon a highway open to the public but under construction or repair, regardless of the attending facts and circumstances. The Supreme Court of Minnesota has not promulgated such a drastic principle, and since we are dealing with Minnesota law, we have no right to attempt to lay down such a doctrine. Indeed, in Hockenhull v. Strom Const. Co., 212 Minn. 71, 2 N.W.2d 430, the Supreme Court of Minnesota expressly ruled that a road contractor, although not subject to provisions of the highway

traffic regulation statute (now, C. 169 Minn.Stat.1949, § 169.03) while actually engaged in work upon the highway, may be held liable for common law negligence,[1] and that questions of negligence of contractor and contributory negligence of plaintiff were for the jury.

The recent case of Hanson v. Bailey, supra, also recognizes this principle. There, the highway under construction was barricaded to prevent motorists from entering the construction zone, but an automobilist drove around the barricade, entered the highway and came into collision with a windrow of tarvia. On the facts, although ruling that the driver of the automobile was barred by his contributory negligence as a matter of law, the Court in affirming judgment for plaintiff-passengers, held that a jury could reasonably find that the contractor was negligent in failing to provide adequate flares or other devices to warn trespassing motorists of the danger of collision with the windrow.

As an analogy to our factual situation, consideration of the decisional law in Minnesota convinces us that the Supreme Court of that state has taken a realistic approach to cases growing out of collisions arising from alleged negligence in parking vehicles on the highway. In an exhaustive opinion by this Court in Northern Liquid Gas Co. v. Hildreth, 8 Cir., 180 F.2d 330, many Minnesota cases of that character are cited, and a number reviewed (see 180 F.2d 333, 334) for the purpose of demonstrating the policy in that state, which is aptly stated by Judge Sanborn, as follows:

"There is unquestionably language in the cases upon which the defendants rely which, when disassociated from the facts of those cases and applied to the instant cases, reasonably can be thought to indicate that the plaintiffs cannot recover. The Supreme Court of Minnesota, however, in Ranum v. Swenson, 220 Minn. 170, 174, 19 N.W.2d 327, 330, said: '* * * We expressly reject the policy of applying arbitrary standards of behavior amounting in effect to rules of law to all cases without regard to surrounding circumstances.'

"It seems to us that the policy of the Supreme Court of Minnesota has been to base its decisions, in cases arising out of automobile accidents, upon the particular facts of each case and to adopt a case by case approach to the varying factual situations presented by such cases, few of which can be arbitrarily classified."

While we are mindful that there inheres in cases of the type under consideration, a factor foreign to the usual situation involving parked vehicles upon an open highway, in that highways, which obviously are under construction, present notice which should alert an ordinarily prudent person to danger, nevertheless, we cannot say from the holdings in Hockenhull, Olson and Hanson, supra, all highway construction cases, that the Supreme Court of Minnesota has departed from the use of a case to case approach to automobile accidents, Northern Liquid Gas Co. v. Hildreth, supra, or from the well settled rule that questions of negligence and contributory negligence are ordinarily for the jury to determine. See and compare Jurgensen v. Schirmer Transp. Co., 242 Minn. 157, 64 N.W.2d 530, 533, 534; Schubitzke v. Minneapolis, St. P. & S. S. M. R. Co., 244 Minn. 156, 69 N.W. 2d 104, 106; Shastid v. Shue, 247 Minn. 314, 77 N.W.2d 273; Lee v. Smith, 253 Minn. 401, 92 N.W.2d 117, 126–128; Mounds Park Hospital v. Von Eye, 8 Cir., 245 F.2d 756, 763; Northern Liquid Gas Co. v. Hildreth, supra, and see the recent opinion, Gruenhagen v. Brelje, 252 Minn. 203, 89 N.W.2d 738.

██ Having the foregoing principles in mind, we are not persuaded to rule that the evidence conclusively establishes that defendants were free from neg-

---

1. "Reasonable care commensurate with the circumstances;" possible failure to exercise adequate precautions to "warn, direct, or assist." 2 N.W.2d 430, 432.

ligence, or that plaintiff was guilty of contributory negligence as a matter of law. As we have seen, the highway, although under construction, was open to vehicular traffic; the construction equipment was completely on plaintiff's side of the highway; it was dark and there was evidence from which a jury could reasonably find that there were no lights burning on the front of the tractor and that defendants had failed to protect the working area with adequate lights or other signals showing the location of the equipment on the north side of the traveled portion of the roadway. Plaintiff's headlights were on, his speed did not exceed the limits fixed by law, and he was looking straight ahead. It may be that if the Supreme Court of Minnesota was called upon to decide this case on this record, that Court might hold defendants free of negligence or plaintiff guilty of contributory negligence as a matter of law. Again, we believe it entirely probable that that Court would dispose of the matter as the District Court did, and rule that under the circumstances the issues of defendants' negligence and plaintiff's contributory negligence were for the jury's determination. Thus, it would seem that at best the case presents a doubtful question of state law. What we said in Homolla v. Gluck, 8 Cir., 248 F.2d 731, 733, is apropos:

"This case in principle differs in no controlling respect from others in which this Court has consistently refused to attempt to outpredict, outforecast or outguess a trial judge with respect to a doubtful question of the law of his State." (Citing cases).

In National Bellas Hess, Inc. v. Kalis, 8 Cir., 191 F.2d 739, 741, certiorari denied 342 U.S. 933, 72 S.Ct. 377, 96 L.Ed. 695, in further elaboration of the same rule, this statement appears:

"This Court has repeatedly ruled that it will accept the considered views of a District Judge as to doubtful questions of local law. Many of the cases in this Court and the Supreme Court which support that rule will be found in the case of Buder v. Becker, 8 Cir., 185 F.2d 311, 315-316. In Western Casualty & Surety Co. v. Coleman, 8 Cir., 186 F.2d 40, 43, we said: 'The burden of demonstrating error is upon the Casualty Company. In a case controlled by local law, that burden is a peculiarly heavy one. This Court is not an appellate court of the State of Missouri and establishes no rules of law for that State. We have repeatedly said that, in reviewing doubtful questions of local law, we would not adopt views contrary to those of the trial judge unless convinced of error, and that all that this Court reasonably can be expected to do in such cases is to see that the determination of the trial court is not induced by a clear misconception or misapplication of the local law. Russell v. Turner, 8 Cir., 148 F.2d 562, 564; Buder v. Becker, 8 Cir., 185 F.2d 311, 315, and cases cited. If a federal district judge has reached a permissible conclusion upon a question of local law, we will not reverse, even though we may think the law should be otherwise.'"

From what has been said, it is apparent that the ruling of the trial court here was not induced by a clear misconception or misapplication of the state law. The judgment appealed from is

Affirmed.