LYLE MILLER, A MINOR, BY HIS MOTHER AND NATURAL GUARDIAN, CRYSTAL MILLER, AND ANOTHER v. NANNA HUGHES, INDIVIDUALLY AND AS ADMINISTRATRIX OF ESTATE OF DENNIS HUGHES.

105 N. W. (2d) 693.

October 28, 1960—No. 38,027.

*Ryan, Kain, Mangan, Westphal & Kressel,* for appellants.
*William E. Crowder,* for respondents.

NELSON, JUSTICE.

This is an appeal from an order denying a motion for a new trial in an action by a minor and his natural guardian to recover damages for personal injuries arising out of an automobile accident.

On September 27, 1957, Dennis Hughes, age 16, drove a Mercury automobile to the Isles Cafe in Minneapolis, where he met plaintiff Lyle Miller, age 18 years. Dennis, Lyle, and the latter's girl friend, Darlene Archer, age 16, left the cafe about 9:30 p. m., with Dennis driving, and drove to a birthday party for Kathy Burns in North Minneapolis. Later Dennis, Lyle, Darlene, and Roberta Burns, age 12, left the party in the Mercury automobile. The car was driven on Lyndale Avenue North to Olson Highway and on to Royalston Avenue or Highland Place. Royalston Avenue, which is a curved street, approaches a bridge over the Great Northern Railway tracks. The railroad tracks are at the bottom of a steep embankment, some 25 feet below the level of Royalston Avenue.

The Mercury automobile was driven down Royalston Avenue toward the bridge. It left scuff marks on the street beginning some 450 feet from the top of the embankment. The marks indicated that the car struck the curb two times as it careened from one side of the street to the other. The car left the street, went into a billboard, down the bank, and lodged at a 50-degree angle with its front end against the railroad track and its rear end on the slope of the bank. The weather was clear, the pavement dry, and the record indicates that there was no other traffic at the time.

Plaintiff Lyle Miller, Darlene Archer, and Roberta Burns testified that Dennis Hughes was the driver of the automobile at the time the accident occurred and that Lyle Miller occupied the rear right seat of the car, that his girl friend, Darlene Archer, occupied the rear left seat, and that Roberta Burns was seated in the front right seat beside the driver. This seating arrangement, as positively testified to, is logically supported by common experience and normal human conduct.

A police officer, Herbert G. Shoemaker, assigned to the traffic personal injury accident car, was called to the scene of the accident. At the location of the automobile he first noticed a boy lying in front of the car parallel with the tracks. The front of the car was pushed back, smashed considerably. The windshield was gone and the head and arm of another boy was hanging out through the windshield opening. He was bleeding from the arm. The officer saw two girls in the area but could not recall exactly where the two girls were at the time. He indicated that they may have been alongside the car. He also testified that fragments of teeth were found on the railroad tracks. Under cross-examination Shoemaker stated that the boy on the ground parallel with the tracks was a little bit to the right of the right front of the car; that at the scene of the accident he did not know the identity of either boy but upon going to the hospital he could identify the boy hanging from the windshield as Dennis Hughes and the boy lying on the tracks as Lyle Miller. He stated that the boy placed in station 21 in Minneapolis General Hospital, who later died there, was the youth who was found lying partially through the windshield.

Dr. Joseph Geller, an intern at Minneapolis General Hospital, who was called as a defense witness, testified that he removed some chipped teeth fragments from the mouth of the boy lying on the ground and inserted a plastic tube in his mouth to aid his breathing. Mrs. Crystal Miller, the mother of Lyle Miller, testified that when she came to the hospital Lyle had a tube in his mouth. This testimony clearly indicates that Lyle Miller had serious difficulty in breathing because of his injuries.

While both the officer and the intern testified to the surrounding circumstances as they found them, there is less confusion and uncer-

tainty as well as more positiveness in the testimony of the investigating officer, who was the first to arrive on the scene, than on the part of the hospital intern whose later hurried arrival coincided with the ambulance rush to the hospital.

There is no testimony by any witness that the occupants of the car, including Lyle Miller, were cognizant of any danger so as to permit any warning to be given before they went over the embankment. There is no testimony in the record indicating that Lyle Miller suffered any lacerations of the arms or that he had any scars at the time of the trial indicating that his arms were injured in the accident or that any bleeding had occurred from them, such as the officer observed on the boy whose head and arm were hanging out over the hood through the windshield.

It should be observed that we are bound to consider the evidence in the light most favorable to the verdict and to sustain the verdict if it is possible to do so on any reasonable theory of the evidence. Thus, unless the jury's verdict is manifestly and palpably contrary to the evidence, it should not be set aside.

The jury here returned a verdict in favor of plaintiff Lyle Miller for $14,250 and in favor of Crystal Miller, his mother and natural guardian, for $2,500.

The defendants ask a reversal of the court's denial of the motion for a new trial upon the following assignments of error: (1) That defendants have been deprived of a fair trial by the trial judge's interruption of their counsel's closing argument; (2) that the trial court erred in characterizing the testimony of plaintiffs' witnesses relative to who was the driver of the car at the time of the accident as "positive"; (3) that the court further erred in an instruction which it gave regarding the falsity of certain testimony; (4) that the court was in error in its charge as to weight and effect of circumstantial evidence or reasonable inferences to be drawn from the evidence; and (5) that the court erred in its refusal to submit the issue of plaintiff's contributory negligence or assumption of risk.

The defendants in this case deny that Dennis Hughes was driving the automobile at the time that the accident occurred, and claim that Lyle Miller was driving the automobile at the time of the accident.

The record does not indicate that the defendants seriously contested the fact that the driver of the car, whoever he may have been, was negligent in the operation of the automobile. In fact, the case was tried on the theory that the issues to be determined were, first, who was driving the car and, second, if the jury should find there was liability on the part of defendants, then what was the extent of the injuries resulting therefrom and the amount of the damages. If on the other hand Lyle Miller was driving the car, plaintiffs could not recover. The arguments to the jury appear to have been directed mainly to the question of who was driving the car and to have assumed that such driver, whoever he might be, was guilty of negligence.

Defendants' first assignment of error concerns the trial court's interruption of defense counsel's closing argument as follows:

"* * * You will recall that on cross examination I asked Officer Shoemaker, 'As a matter of fact, Officer, you had considerable doubt in your mind that night, did you not, as to who was the driver of that automobile?' And he said, 'No, sir, I didn't. Looking the situation over I always assumed that the driver was the boy who was lying part way out the windshield about in the center of the hood.' And ladies and gentlemen, there is positive identification from physical facts, physical facts which cannot lie—

"The Court: You don't intend to infer that the officer said Miller was the man?

"Mr. Westphal: He said, your Honor, that he assumed that the driver of the automobile—

"The Court: He didn't identify the body as being—

"Mr. Westphal: That's right, he couldn't identify them as to name, your Honor, but my point is that his testimony was when I asked him that question, 'As a matter of fact, Officer, you had considerable doubt in your own mind,' and he said, 'No, because I always assumed that the boy who was lying in the middle of that windshield was the driver of the automobile.' And we have positive identification from the false teeth that stuck out in Officer Shoemaker's mind and stuck out in Dr. Geller's mind that the body that was in the center of that windshield was Lyle Miller, and that the body that was outside was Dennis Hughes, and if I misspoke myself—

"The Court: You mean positive identification or by the circumstances?

"Mr. Westphal: By circumstances, your Honor, which I think makes the identification of these bodies, one on the right side in the right front being Dennis Hughes because of the situation as to the false teeth that were pulled out of his mouth and that were laying around his body."

Viewing the record as a whole, we are unable to find any prejudice from the court's remarks. This court has heretofore said, where a similar issue was raised, that:

"While it is the rule that in the summation of a case to the jury counsel should be given considerable latitude in pointing out such inferences as he believes reasonably may be drawn from the evidence, the rule does not confer on counsel a privilege which has no bounds. Where counsel seeks to have the jury draw inferences which clearly are not justified by the evidence, it is not only permissible for the trial court to call the jury's attention to the fact that such inference is not warranted by the evidence, but it is the court's duty to do so." Tilbury v. Welberg, 238 Minn. 91, 100, 55 N. W. (2d) 685, 690.

Defendants also claim error on the part of the court in the following portion of its charge:

"* * * Plaintiff has offered positive testimony here by witnesses that Dennis Hughes was the driver of this automobile at the time of this accident. It is the defendant's contention that the physical factors in this case indicate that Lyle Miller was the driver of this car and that this is determined by what is known as circumstantial evidence. Issuable facts may be proved by circumstantial evidence. The law permits a jury to consider circumstantial evidence and to draw reasonable inferences of fact from evidence of the surrounding circumstances which have been established by other direct evidence. It is not enough that it affords a basis for bare conjecture, speculation or suspicion. No inference of fact or law is reliable when drawn from premises which are uncertain. It is not enough to support defendant's contention that Miller might have been the driver; the evidence must establish that he was the driver, the circumstantial evidence. I say, you

have no right to draw an inference from circumstantial evidence when drawn from premises which are uncertain. I might add here, that if you find that if Miller was the driver of this car, it is equivalent to finding that the three passengers in the car, including Miller have testified falsely in this lawsuit."

It will be noted that immediately following the above statement the court said:

"* * * So, as I say, if you find that Miller was the driver of this car, then, of course, he couldn't recover, because he couldn't profit from his own negligence and there would be no liability on the part of Nanna Hughes. On the other hand, if you find that by a fair preponderance of the evidence the plaintiff has established that Dennis Hughes was the driver of this car and that his negligence as I have indicated to you is a proximate cause of this accident, and he was guilty of negligence as the Court has charged you, then you would find in favor of plaintiffs * * *."

Black, Law Dictionary (4 ed.) p. 1324, sets forth the following:

"POSITIVE EVIDENCE. Direct proof of the fact or point in issue; evidence which, if believed, establishes the truth or falsehood of a fact in issue, and does not arise from any presumption. It is distinguished from circumstantial evidence."

So, evidence is "positive" where the witness states that a certain thing did or did not happen or exist, and "negative" where the witness states that he did not see or know of the happening or existence of a circumstance or fact. Bobst v. Bobst, 160 Pa. Super. 340, 51 A. (2d) 414; In re Estate of Woodward, 147 Neb. 270, 23 N. W. (2d) 75; see, Rogers v. State, 72 Ga. App. 791, 35 S. E. (2d) 473; Staples v. Spence, 179 Va. 359, 19 S. E. (2d) 69; People v. Macken, 32 Cal. App. (2d) 31, 89 P. (2d) 173; Cox v. State, 144 Tex. Cr. 554, 164 S. W. (2d) 848; State v. Hubbard, 351 Mo. 143, 171 S. W. (2d) 701.

In O'Leary v. Wangensteen, 175 Minn. 368, 370, 221 N. W. 430, 431, this court said:

"* * * The rule is well established in this state that the court or

jury cannot disregard the positive testimony of an unimpeached witness unless and until its improbability or inconsistency furnishes a reasonable ground for so doing, and this improbability or inconsistency must appear from the facts and circumstances disclosed by the record in the case. It cannot be arbitrarily disregarded by either court or jury for reasons resting wholly in their own minds and not based upon anything appearing on the trial."

Certainly, based upon the record in the instant case, the use of the word "positive" was proper in referring to the testimony of the three passengers. Also, it was true that if the jury found that Lyle Miller was the driver, they would of necessity have had to find that the passengers had testified falsely. The court had previously given the customary charge on credibility of witnesses and informed the jurors that they were the sole judges thereof and of the weight that they would attach to the testimony. They were also advised what they had a right to consider in determining credibility and that they might disregard the entire testimony of any witness who had willfully or knowingly testified falsely as to any material fact at issue. If the statement objected to was repetitious, it was at most error without prejudice.

We find nothing to criticize in the court's charge on the issue of negligence or circumstantial evidence.

In Hill v. N. P. Ry. Co. 210 Minn. 190, 195, 297 N. W. 627, 629, this court held sufficient and approved the following language in the trial court's charge:

"Any fact which is in issue, that is, which is in dispute between the parties, and which either side has the burden of proving, such as negligence, or proximate cause, or contributory negligence, may be proved by circumstantial evidence as well as by direct evidence. Circumstantial evidence is sufficient if it furnishes a reasonable basis for you to infer that the fact is as claimed by the party who has the burden of proving it. *Circumstantial evidence is not sufficient if it is merely consistent with the claim which the party makes and is also consistent with some other theory.* That is not enough. However, you cannot base a verdict on mere speculation and conjecture as to what may have happened at the time in question. You cannot assume the

existence of some fact which is not proved by either direct or circumstantial evidence and then base a verdict on such assumption."

While portions of a trial court's charge if taken out of context might appear to be subject to error, inconsequential or otherwise, it is nevertheless fundamental that the charge must be examined as a whole, and in doing so here we find little, if any, merit in the objections to it. We think the charge upon the issues involved was well balanced and generally satisfactory. Even if the trial court made remarks assigned as error on the grounds of being improper, an appellate court rarely feels justified in granting a new trial on this ground. 14 Dunnell, Dig. (3 ed.) § 7098, and cases cited under note 79.

Counsel for the defendants made no written request to the trial court for the submission of the issue of plaintiff's contributory negligence or assumption of risk. The court after defining the term negligence charged the jury as follows:

"* * * The Court feels from all the physical factors in this case that as a matter of law reasonable inference can be drawn here that whoever the driver of this car was was guilty of negligence in the operation of that car from the very manner in which this accident occurred, and that the negligence of the driver was a direct or proximate cause of this accident. So the first question that is presented here for your determination, and I say the question of negligence is out of your consideration, the Court charges you you should find there was negligence on the part of the driver whoever you find he may have been."

This portion of the charge placed the issue of negligence squarely before the jury pursuant to the theory upon which the case had been tried. Upon the present state of the record the case did not require submission of either the issue of contributory negligence or that of assumption of risk.

We have said that a passenger must exercise reasonable care, but that does not mean that he must assume any responsibility for the management of the car, nor that he is required to be constantly on the alert to discover dangers which the driver may not discover. A duty to take some affirmative action to preserve his own safety is

imposed on the passenger only under some unusual circumstances such as incompetence or carelessness of the driver. We have also said that even when the passenger discovers some hazard, before he is chargeable with contributory negligence, he must not only be aware that the driver is oblivious of the danger but there must be facts from which it can be found that he could have given a warning which might have averted the accident. Burgess v. Crafts, 184 Minn. 384, 238 N. W. 798; Kelling v. Howard, 249 Minn. 75, 81 N. W. (2d) 85; Rutz v. Iacono, 229 Minn. 591, 40 N. W. (2d) 892.

We fail to see how submission of these issues in the instant case would have changed the result.

■ In Church of the Immaculate Conception v. Curtis, 130 Minn. 111, 120, 153 N. W. 259, 262, this court said:

"* * * It has become firmly established that this court will not reverse a trial court for an error which this court can see did not change the result nor cause any substantial prejudice to the rights of the complaining party."

■ In Gordon v. Pappas, 227 Minn. 95, 100, 34 N. W. (2d) 293, 296, we said:

"* * * Where the verdict is the only one warranted under the law and by the evidence, error in the charge and misconduct on the part of counsel for the prevailing party in his closing argument are harmless and no grounds for a new trial."

We have discovered no prejudicial error. If errors were in any manner committed, we would have to term them harmless and of such character as not to affect the decision.

We conclude on the basis of the whole record that substantial justice has been done, the parties have had a fair trial, and the order of the court below should be affirmed.

Affirmed.