**STATE of Minnesota, Respondent,**

v.

**Douglas Dale HORNING, Appellant.**

**No. C5–93–754.**

Court of Appeals of Minnesota.

Jan. 18, 1994.

Review Granted March 31, 1994.

Hubert H. Humphrey, III, Atty. Gen., Margaret H. Chutich, Asst. Atty. Gen., St. Paul, Roger S. VanHeel, Stearns County Atty., St. Cloud, for respondent.

John M. Stuart, State Public Defender, Charlann E. Winking, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by CRIPPEN, P.J., and HUSPENI and SHORT, JJ.

## OPINION

HUSPENI, Judge.

Appellant Douglas Dale Horning was charged with driving with an alcohol concentration of 0.10 or more, Minn.Stat. § 169.121, subd. 1(d) (1992), and alcohol concentration of 0.10 or more within two hours of driving, Minn.Stat. § 169.121, subd. 1(e) (1992). The jury convicted appellant of driving with an alcohol concentration of 0.10 or more, but acquitted him of the charge under subdivision 1(e). Appellant challenges his conviction on the ground that the trial court impermissibly excluded evidence of his lack of impairment. Because we find no abuse of discretion in excluding this evidence, we affirm.

## FACTS

Around 9:00 p.m. on March 5, 1992, truck driver Robert Orozco was driving a truck and 48–foot trailer in the right-hand lane of westbound Interstate 94, in Stearns County,

Minnesota. He observed a vehicle beginning to pass him on the left, heard a crash coming from the left and behind him, and then saw the vehicle veer in front of his truck. He saw sparks coming over the hood of his truck and took his foot off the accelerator, thinking that he was pushing the vehicle with his truck. The car then went off the road to the right of the truck. Orozco pulled off the road a short distance beyond the accident site, secured his truck and walked back to where the accident occurred, estimating that a total of 3–5 minutes elapsed since the accident. He took appellant, the driver of the car, back to his truck to wait for the highway patrol, and they waited there for 15–20 minutes drinking coffee.

Appellant testified at trial that he attempted to pass Orozco's truck, saw lights in his mirror, thought he saw another car and felt a jolt. He then hit the guardrail on the left side of the road and spun out. Appellant further testified that Orozco's truck hit him and pushed him into the ditch. He also stated that after the accident an unidentified person at the accident site offered him a paper bag containing a 40–ounce bottle of malt liquor and four or five 12–ounce bottles of beer. Appellant testified that he drank the malt liquor and two or three of the beers before Orozco appeared and took him to Orozco's truck, which appellant testified was ten minutes after the accident occurred.

The state trooper who responded to the accident gave appellant a ride to Melrose, where appellant's car was towed. At the garage, the trooper inspected appellant's car and found heavy damage to the front part of the car extending to the sides of the car. He noticed no accident damage on the rear of appellant's car and did not believe that any of the damage extended past the driver's door.

The trooper took appellant to the police station in Sauk Centre, where he administered an Intoxilyzer test at approximately 11:19 p.m. The test revealed that appellant had an alcohol concentration of 0.15.

At trial the state trooper who administered the Intoxilyzer test testified about how he conducted the test. He also testified that during his interview with appellant, appellant stated that before the accident he drank one screwdriver at around 7:30 or 8:00 p.m. Also, when asked by the trooper whether he had consumed alcohol after the accident, appellant responded "no." Appellant claims that the trooper asked him whether he had consumed alcohol after his *arrest*, to which appellant answered "no." Appellant also testified that he told the trooper he consumed alcohol after the accident.

A forensic scientist testified at trial that the Intoxilyzer machine was operating properly and produced an accurate and reliable test. Extrapolating from the results achieved in the Intoxilyzer test, the scientist testified that appellant's alcohol concentration at the time of the accident would have been approximately 0.187 to 0.193. The defense asked how much alcohol appellant would have had to consume to achieve the 0.15 concentration level if he had consumed it between the time of the accident and the time of the test. The scientist responded that it would take about five 12–ounce beers. On redirect he testified that if appellant drank the amount of malt liquor and beer he claimed he drank after the accident, his alcohol concentration would have been about 0.115 at 11:19 p.m., lower than the actual Intoxilyzer results.

Since appellant was charged with driving with an alcohol concentration of 0.10 or more and alcohol concentration of 0.10 or more within two hours of driving, the state made a motion in limine [1] to limit testimony to evidence germane to appellant's alcohol concentration and to exclude all testimony regarding whether appellant appeared to be under the influence of alcohol. The court granted the motion. Appellant challenges the exclusion of evidence of his lack of impairment as

1. We do not encourage the use of motions in limine against defendants in criminal cases. As our supreme court stated in *State v. Brechon*, 352 N.W.2d 745 (Minn.1984), such motions pose a danger of undermining a defendant's constitutional rights by limiting the accused's defenses before the state has borne its burden of proof. *Id.* at 747–48. Although it would have been better for the prosecution in this case to have objected to defendant's proffered evidence at trial, it does not change our decision on the merits as to the relevance of that evidence.

a violation of his constitutional right to present a defense.

## ISSUE

In a prosecution for driving with an alcohol concentration of 0.10 or more, did the trial court err by excluding evidence regarding appellant's lack of impairment?

## ANALYSIS

 Rulings on evidentiary matters generally rest within the sound discretion of the trial court. Even if the trial court errs in an evidentiary ruling, "[a] reversal is warranted only when the error substantially influences the jury to convict." *State v. Brown*, 455 N.W.2d 65, 69 (Minn.App.1990) (quoting *State v. Loebach*, 310 N.W.2d 58, 64 (Minn. 1981)), *pet. for rev. denied* (Minn. July 6, 1990).

Appellant claims that he was denied the right to present a defense when the trial court excluded all testimony relating to whether appellant appeared to be under the influence of alcohol. In order to rebut the accuracy of the Intoxilyzer test and the extrapolation testimony, appellant wanted to offer testimony that no one at the accident scene noticed any signs of his intoxication. He also wanted to offer this evidence in support of his affirmative defense under Minn.Stat. § 169.121, subd. 1(e) (1992) that he consumed a sufficient quantity of alcohol after driving to cause his alcohol concentration to exceed 0.10. *See* Minn.Stat. § 169.-121, subd. 2 (1992).

The state's view, however, is that the statute under which appellant was charged requires only proof that appellant drove with an alcohol concentration of 0.10 or more, and therefore the only relevant rebuttal evidence is that which casts doubt on the accuracy of the test establishing illegal alcohol concentration. Thus, the state claims, evidence of lack of impairment is irrelevant here, or even if it is relevant, its probative value is outweighed by considerations of undue delay or waste of time because it would distract the jury from the issue of whether appellant's alcohol concentration exceeded the legal limit.

We have not addressed this issue directly in the past. In *State v. Elmourabit*, 373 N.W.2d 290 (Minn.1985), however, the Minnesota Supreme Court, in discussing the proper evidentiary weight to assign videotaped dexterity or sobriety tests, found that success on dexterity tests is not determinative because a person may be under the influence even though "he may attend to his business and may not give any outward and visible signs to the casual observer that he is drunk." *Id.* at 292–93 (quoting *State v. Graham*, 176 Minn. 164, 168, 222 N.W. 909, 911 (1929)).

In *Heitkamp v. State*, 363 N.W.2d 849 (Minn.App.1985), this court examined what foundation is necessary to admit Breathalyzer test results. In discussing the available evidence and the charges under both subdivisions 1(a)[2], and 1(d) of Minn.Stat. § 169.121, we found that testimony concerning appellant's driving and physical appearance supported the trial court's finding that appellant was driving while under the influence (subdivision a), and that testimony concerning the results of the breath test and how it was performed supported the court's finding that appellant's alcohol concentration was 0.10 or more (subdivision d). *Id.* at 851.

 *Elmourabit* and *Heitkamp* persuade us to reject appellant's argument. *Elmourabit* cautions us not to give impairment evidence too much weight, while *Heitkamp* appears to link impairment evidence with a subdivision 1(a) charge rather than a subdivision 1(d) charge. Furthermore, by creating both an offense for driving under the influence of alcohol, Minn.Stat. § 169.121, subd. 1(a), *and* an offense for driving with an alcohol concentration of 0.10 or more, Minn.Stat. § 169.121, subd. 1(d), the statute itself shows a legislative intent to distinguish between subjective factors (signs of whether a driver was under the influence of alcohol)˙ and more objective means to determine whether a driver has an alcohol concentration of 0.10 or greater (Intoxilyzer results). Thus, on the

2. Minn.Stat. § 169.121, subd. 1(a) makes it an offense to drive "when the person is under the influence of alcohol."

basis of relevancy, we find no error in the trial court's refusal to admit evidence of lack of impairment where, as in this case, a driver is convicted under subdivision 1(d) of Minn. Stat. § 169.121, and the state presents sufficient evidence to prove beyond a reasonable doubt that the driver's alcohol concentration level exceeds the legal limit.[3]

Other states with statutes similar to Minnesota's differ in their conclusions regarding admission of evidence of lack of impairment. Several states permit such evidence even in cases where the driver is charged with having an alcohol concentration over the legal limit. *See, e.g., Denison v. Anchorage*, 630 P.2d 1001, 1003 (Alaska App. 1981) ("[W]e believe that admissibility of evidence of actual sobriety offered to rebut the accuracy of a breathalyzer result stands on the same footing as any other type of relevant circumstantial evidence"); *Fuenning v. Superior Court*, 139 Ariz. 590, 599, 680 P.2d 121, 130 (1983) (evidence of impairment might be relevant to the jury's determination of whether the test results are an accurate measurement of alcohol concentration); *State v. Clark*, 286 Or. 33, 593 P.2d 123, 127 (1979) (results of chemical analysis are subject to impeachment on the same basis as any other testimony). The Arizona courts, however, also recognize that impairment evidence might be excluded in a case charging a person with driving with an alcohol concentration of 0.10 or more if the court believes that the observations might mislead or divert the jury from the principal issue of the driver's alcohol concentration. *Fuenning*, 139 Ariz. at 600, 680 P.2d at 131.

Other jurisdictions treat statutes such as Minn.Stat. § 169.121, subd. 1(d) as per se offenses, and do not permit impairment evidence. *See,. e.g., Frazier v. City of Mont-*

*gomery*, 565 So.2d 1255, 1257 (Ala.Crim.App. 1990) (to prove defendant's alcohol content was 0.10 or more the prosecution need not prove that defendant's ability to drive was impaired); *Commonwealth v. Kemble*, 413 Pa.Super. 521, 605 A.2d 1240, 1243 (1992) (impairment evidence is not relevant because it does not reasonably tend to prove/disprove that defendant's alcohol concentration was 0.10 or more at the time she drove, does not tend to make the fact more or less probable, and does not support a reasonable inference or presumption regarding her alcohol concentration). *But see Washington v. District of Columbia*, 538 A.2d 1151, 1156–57 (D.C.Cir. 1988) (for "per se" offense it is unnecessary to produce evidence of a defendant's impairment, but trier of fact must also consider any other relevant evidence tending to show that the accused did not have illegal blood alcohol content).

Even if we were to determine here that appellant's lack-of-impairment evidence was relevant, we recognize that the trial court has discretion to refuse admission if the probative value of that evidence is substantially outweighed by dangers of unfair prejudice, confusion of the issues, misleading the jury, or considerations of undue delay, waste of time, or needless presentation of cumulative evidence. *See* Minn.R.Evid. 403. The record before us indicates that if the trial court had balanced the probative value and possible dangers of admitting appellant's proffered evidence and had exercised its discretion to exclude it, a reviewing court would uphold such an exercise of discretion.[4] The state presented substantial evidence regarding the Intoxilyzer test results and the accuracy of the test and machine. Appellant attempted unsuccessfully to impeach the reliability of the Intoxilyzer results. We con-

---

3. Although appellant was acquitted of the charge brought under Minn.Stat. § 169.121, subd. 1(e) (alcohol concentration of 0.10 or more within two hours of driving), the relevance of lack of impairment evidence to a subdivision 1(e) charge merits brief comment. Because post-driving consumption of alcohol is an affirmative defense to a subdivision 1(e) charge, *see* Minn.Stat. § 169.121, subd. 2 (1992), we believe lack-of-impairment evidence would be relevant to such a charge and admissible subject to the trial court's discretion.

4. We note that appellant did present evidence that he drank alcohol after the accident. The jury thus could consider the possibility of post-driving alcohol consumption along with evidence of Intoxilyzer results and all other testimony before it, in both the subdivision 1(d) and 1(e) charges. It was only testimony concerning lack of impairment that appellant was prohibited from introducing.

clude that the state met its burden under the statute to prove that appellant violated Minn. Stat. § 169.121, subd. 1(d), and that admitting lack-of-impairment evidence would not have changed the outcome in this case.[5] *See Miller v. Hughes,* 259 Minn. 53, 62, 105 N.W.2d 693, 699 (1960) (reviewing court will not reverse for an error that did not change the result).

The jury also was faced with several credibility issues raised by the testimony regarding the accident. Orozco reported that he heard a crash from behind his truck as appellant's car attempted to pass him, and that appellant's car veered in front of the truck, which pushed appellant's car. Appellant's version of the story is that the accident occurred when his car was struck from behind. The trooper, however, found no damage to the rear of appellant's car. Appellant also claimed that he consumed a 40–ounce malt liquor and two or three 12–ounce beers in a maximum of 15 minutes after an unidentified bystander offered it to him. Orozco testified, however, that appellant was not out of Orozco's sight from the time the two first met until the state troopers arrived. We must assume the jury disbelieved any testimony conflicting with the result reached. *State v. Lau,* 409 N.W.2d 275, 277 (Minn.App.1987).

■ We find no merit in appellant's argument that the court's decision to exclude impairment evidence creates an irrebuttable presumption that alcohol concentration of 0.10 has been proved unless there is obvious evidence of machine error. In *State v. Chirpich,* 392 N.W.2d 34 (Minn.App.1986), *pet. for rev. denied* (Minn. Oct. 17, 1986), *cert. denied,* 481 U.S. 1015, 107 S.Ct. 1891, 95 L.Ed.2d 498 (1987), we stated that Minn.Stat. § 169.121, subd. 1(e) does not act as an irrebuttable presumption of guilt and impermissibly shift the burden of proof to the defendant. *Id.* at 37. The state still must prove illegal alcohol concentration beyond a reasonable doubt and both sides can produce expert testimony to support their arguments. *Id.*

We believe that *Chirpich* applies equally to proof under subdivision 1(d).

## DECISION

The trial court did not err in excluding evidence regarding lack of impairment in a prosecution under Minn.Stat. § 169.121, subd. 1(d).

**Affirmed.**

---

**5.** Even if the trial court admitted appellant's lack-of-impairment evidence, both parties would have received the benefit of that ruling. If appellant produced witnesses who testified that appellant did not act as if he were under the influence, the state would have had an equal opportunity to produce subjective observations concerning appellant's demeanor or testimony that frequent drinkers do not necessarily show the effects of alcohol.